UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION



VIVEK SHAH, pro se,
    Petitioner,　　　　　　　　　　Criminal Action Nos.: 5:12-172
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　5:13-127
v.

UNITED STATES,　　　　　　　　　　　　Civil Action No.: 5:15-7542
    Respondent.

## SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255

    Petitioner Vivek Shah, pro se, files this second supplemental in support of his § 2255 Motion because he has just discovered a decision of the Fourth Circuit Court of Appeals, <u>United States v. White</u>, 2016 U.S. App. LEXIS 183, No. 14-4375 (4th Cir. 2016). The digital law library at Petitioner's prison was updated on or around March 3, 2016, at which time Petitioner discovered <u>White</u>, which was not previously available to him. For several reasons Petitioner contends that the <u>White</u> opinion is either 1) erroneous or inapplicable, or 2) retroactively applicable, or 3) not retroactively applicable - in yet either argument, relief is still warranted.

### ARGUMENT

#### I. <u>White</u> IS ERRONEOUS OR INAPPLICABLE

    Of course this Court is bound by its appellate court's decision, but for determining the next two sections' retroactivity issues, as well as preserving arguments for review of the 3-judge panel to the en banc court of the Fourth Circuit, or the U.S. Supreme Court, Petitioner argues as below.

    Having never before interpreted the meaning of the element, the Fourth Circuit held "that the intent to extort for purposes of § 875(b) is the intent to procure something of value through the use of a wrongful threat to kidnap or injure the

1.

person of another." This interpretation is incorrect as discussed next. "It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses. Where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." Sekhar v. United States, 186 L.Ed.2d 794, 800 (2013) (internal citations and punctuations, quotations omitted). § 875 was made law in 1932. Pub. L. No. 72-274 (1932). For a complete legislative history and understanding of §§ 875 & 876, see United States v. Havelock, 664 F.3d 1284, 1286-1381 (9th Cir. 2012); United States v. Carlson, 2015 U.S. App. LEXIS 9121 (8th Cir. 2015) (dissenting opinion); United States v. Baker, 890 F. Supp. 1375,1383-84 (E.D. Mich., June 21, 1995); 75 Cong. Rec. 13, 284 (remarks of Rep. Cochran) (a purpose of the bill "was to amend the postal laws so as to make it a felony to use the mails to demand ransom where a person had been kidnapped"). At common-law the term extortion meant the taking of property that was not due to him. See, e.g., Scheidler v. National Organization for Women, Inc., 537 U.S. 393, 402 (2003) ("At common law, extortion was a property offense committed by a public official who took 'any money or thing of value' that was not due to him under the pretense that he was entitled to such property by virtue of his office.")(quoting 4 W. Blackstone, Commentaries on the Laws of England 141 (1769), and citing 2 R. Anderson, Wharton's Criminal Law and Procedure § 1393, pp 790-91 (1957)); 3 W. LaFave,

Substantive Criminal Law § 20.4 (2d ed. 2003); Wilkie v. Robbins 551 U.S. 537, 168 L.Ed. 2d 389, 410 (2007) (under the "technical meaning (of extortion) in the common law,...(t)he officer must unlawfully and corruptly receive such money or article of value for his own benefit or advantage"); Sekhar at 804 ("Extortion... is a great misprison, by westing or unlawfully taking by any officer, by colour of his office, any money or valuable thing of or from any man") (quoting 2 E. Coke, The First Part of the Institutes of the Laws of England 368b (18th English ed. 1823)) (Alito, J., concurring); United States v. Dunkley, 235 F. 1000, 1002 (N.D. Cal., Sept. 28, 1916) ("the word 'extort' has come to have a much wider meaning than this, and, as generally understood, it means the wrongful exaction, whether by an officer or otherwise."); United States v. Deaver, 14 F. 595, 597 (W.D. N.C., 1882) ("The ordinary meaning of the word 'extortion' is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction... The word 'extortion' has acquired a technical meaning in the common law, and designates a crime by an officer of the law, who, under color of his office, unlawfully and corruptly takes any money or thing of value that is not due to him, or more than is due, or before it is due.").

Relying on United States v. Coss, 677 F. 3d 278 (6th Cir, 2012) and United States v. Jackson, 180 F.3d 55 (2d Cir. 1999), it adopted its definition of intent to extort primarily from 18 U.S. C. § 1951's definition of extortion, which defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The Hobbs Act was enacted in 1946 and was modeled after § 850 of the N.Y. Penal Law

3.

(1909). See Sekhar at 801. "Congress borrowed, nearly verbatim, the New York statute's definition of extortion." id. §§ 875 & 876 however were not based on the New York Penal Code's statute, and incorporated the common-law meaning of extortion when enacted in 1932. In particular, Congress did not define extortion in §§ 875 & 876, but decidedly defined extortion in § 1951(b) "(a)s used in this section." Even in Sekhar, when both parties conceded that the extortion definition under the Hobbs Act also applied to § 875(d), the Supreme Court, instead of agreeing as well, stated that "We express no opinion on the validity of that concession." Sekhar at 799.n.1.

 White further holds that intent to extort includes an intent to threaten. But convictions have been had where individuals had the intent to extort without the intent to threaten. Courts have applied the reasonable person standard as to threats when made with the intent to extort. See United States v. Jackson, 986 F. Supp. 829, 832-33 (S.D. N.Y. Dec. 15, 1997) (In the context of § 875(d) the jury was instructed to "find that a reasonable person would have understood the defendant's statement as a **serious expression of intent, determination, or purpose to injure the reputation of another person.**) (emphasis original) (hereinafter "Jackson II") (vac'd on other grounds in Jackson I); United States v. Cooper, 523 F.2d 8, 10 (6th Cir. 1975) (Speaking of § 875(b), the Sixth Circuit stated that "We are not willing to engraft an exception to the statute whereby the maker of a bona fide extortionate threat can later disclaim any criminal conduct by showing that he meant something other than the natural and probable inferences which could be drawn from his communications."); United States v. ~~Nakhlananiaa~~ Nishnianidze, 342 F.3d 6, 14-17 (1st Cir. 2003) (In the context of § 875(b), explicitly rejecting

4.

subjectively intended threats, and holding objective, reasonable person standard); United States v. Stacy, 568 Fed. Appx. 545, 548-49 (10th Cir. 2014) (expressly holding that the determination of a threat for a violation of § 875(b) is an "objective test"). See also United States v. Watkins, 1997 U.S. Dist. LEXIS 3710 (N.D. Ill., Mar. 28, 1997) ("Where a statute contains a threat element and a specific intent element, the existence of a threat element still depends on the perceptions of a reasonable person, but the existence of the specific intent element depends on the specific and subjective intent of the defendant described in the statute"). Contrary to the Fourth Circuit's holding in White, convictions have been had where criminal defendants have had the intent to extort something of value while making a threat in passing. In United States v. Dorman, 752 F.2d 595 (10th Cir. 1985), for instance, Dorman demanded money from a person or else the unsavory result would be the person being turned over to the law enforcement for the person's involvement in drug trafficking. A reasonable person would have found Dorman's statement as a threat of injury, but such statement of turning one over to the law enforcement did not necessitate a finding of specific intent to injure another. A better example is United States v. Krocka, 2008 U.S. Dist. LEXIS 88599 (M.D. Fla., Oct. 22, 2008) (aff'd in part and rev's in part on other grounds). In Count Thirteen, Krocka demanded a picture of two individuals as well as his own wallet, cardcase, ~~watch, gold~~ watch, gold chain, diamond ring, etc. There was no unsavory result expectant if the demands were not met; however, elsewhere in the letter there were statements of "war," "sacrifice," "suffering that one has to endure," and "making your life a little more miserable." As such, Krocka was convicted under § 875(b). In Count Fourteen, Korcka apparent-

5.

ly demands an avoidance of a divorce trial and arbitration, as well as a dismissal of specific monetary claims, in addition to his watch and diamond ring. Although there would not have been an unsavory result if those demands were not met, elsewhere in the letter there were threats such as a "Jeep to come crashing through your bedroom wall inthe middle of the night crushing you and he while you lovebirds were in bed sleeping." The court stated that it was "reasonable to construe the statements as threats to have Defendant's sons inflict bodily harm." Krocka was nevertheless convicted under § 876(b) in that count. See also counts Sixteen and Seventeen. The point is that prior to White, this Court could have convicted one for several statements, each with different intents (or no intent in the case of the threat), and yet convict in violation of either §§ 875(b) or 876(b). Disjoint statements that do not connotate a common intent or purpose could have been convicted under §§ 875(b) or 876(b). Examples of such statements include:

 1. Give me your car or I'll expose your affairs. Your wife and I are gonna get some action when I return to town.

 2. I want $1,000 or I won't prescribe you your pills. When you get cold turkey don't come crying to me.

 3. I am ordering you to sign off your house to our organization. (With a picture of a burning cross).

 4. Transfer your vehicle to my name or you won't like what I do to you. (Although intended to be a legal threat of lawsuit, under the reasonable person standard a person would have been convicted).

White's definition of "the intent to procure something of value through the use of a wrongful threat to kidnap or injure the person of another," does not even speak of consent - a crucial factor distinguishing extortion from robbery. Under White's definition, whether the victim's consent is or is not provided, would become irrelevant. Even the Hobbs Act defines

robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, **against his will,** by means of actual or threatened force, or fear of injury, immediate or future, to his person or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining" and extortion as "the obtaining of property from another, **with his consent,** induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b) (emphasis added). See also United States v. Xiao Qin Zhou, 428 F.3d 361, 371 (2nd Cir. 2005) (the "element of consent is the razor's edge that distinguishes extortion from robbery"); United States v. Brock, 501 F.3d 762, 767-68 (6th Cir. 2007) ("The context in which the consent requirement appears confirms that it must be taken seriously... Failure to respect the consent requirement blurs the line between robbery and extortion") ("It thus is not extortion, but robbery, if the victim gives the property without consent"); Gomez v. Garcia, 81 F.3d 95, 97 (9th Cir. 1996) (Under California law, "[r]obbery and extortion are different crimes distinguished by the fact that in extortion the property is taken with the victim's consent whereas in robbery it is taken against his will") (internal quotatoins omitted).

## II. White IS RETROACTIVELY APPLICABLE

"Judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994). See also Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004). As such, White "announced a new substantive rule that is retroactive on collate-

ral review[.]" Miller v. United States, 735 F.3d 141, 147 (4th Cir. 2013).

Petitioner did not have the intent to procure anything of value. This argument of innocence has been previously made by Petitioner in his Brief and Supplemental Brief in suppport of this Motion. It was Petitioner's intention to procure publicity through the mailing of letters, and not to procure money.

Since the definition of "intent to extort" was not previously available to Petitioner, and that he did not know that his conduct was prohibited, the conviction was obtained in violation of his right to due process of law under the Fifth Amendment. Both §§ 875(b) & 876(b) are void for vagueness as-applied to Petitioner. It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined. Grayned v. City of Rockford, 408 U.S. 104 (1972). "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." id. at 108. Criminal responsibility cannot attach to Petitioner when he could not reasonably understand that his contemplated conduct was proscribed. By sending threatening letters with the intent to obtain publicity to help further his acting career, if such conduct would amount to an intent to extort as defined by White, then there would be a violation of Petitioner's right to fair warning. §§ 875(b) & 876(b) as-applied to Petitioner's conduct does not draw a line that if passed would provide a warning to him of what the law intends to do. "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant

8.

time that the defendant's conduct was criminal." <u>United States v. Lanier</u>, 520 U.S. 259, 267 (1997). Clearly, there was no such clarity that Petitioner's conduct was criminal under §§ 875(b) & 876(b).

Petitioner incorporates by reference all arguments made under Ground One of the <u>Brief</u>, Doc. 112 at 1-5. To be sure, Petitioner explains as following. "It is axiomatic that, 'to be constitutionally valid, a plea of guilty must be knowingly and voluntarily made.' And 'a gulty plea is not knowingly and voluntarily made when the defendant has been misinformed' as to a crucial aspect of his case." <u>United States v. Fisher</u>, 711 F.3d 460, 462 (4th Cir. 2012) (<u>quoting United States v. Brown</u>, 117 F.3d 471, 473 (11th Cir. 1997)). In <u>Brown</u>, the Eleventh Circuit ruled that a guilty plea is invalid without informing a defendant that knowledge of illegality of structuing was an essential element of the crime. "Brown's misapprehension concerning the critical elements of his charged offense substantially undermines the reliability of his plea. Brown has never admitted all the elements of the crime with which he was charged.. Because Brown was specifically and affirmatively misinformed that such knowledge was not an element of the crime, his guilty plea was made in ignorance of the **'true** nature of the charge against him.'" <u>id</u>. at 478-79 (<u>quoting Henderson v. Morgan</u>, 426 U.S. 637, 645) (emphasis original). At the time of his plea, Petitioner's misapprehension was that the government was required to prove that the element of threat required only a showing of "whether an ordinary, reasonable person who is familiar with the context of the communication would interpret it as a threat of injury," <u>supra</u>, and not the Petitioner's, subjective knowledge of the threat, and hence substantially undermines the reliability of his

9.

plea. Without knowing that "intent to threaten" as required by <u>White</u>, was a necessary element of "intent to extort," and since he was misinformed that such mens rea was not required to be proven, his plea was made in ignorance of the true nature of the chrage against him. Further, the definition of intent to extort provided in <u>White</u> is not wholly congruous to the definition understood by the Court, Petitioner, or Respondent. It may be true today that courts in the Fourth Circuit know the true nature of a charge under §§ 875(b) or 876(b), but at the time Petitioner pled guilty, he did not know that.

"[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unles the defendant possesses an understanding of the law in relation to the facts." <u>McCarthy v. United States</u>, 394 U.S. 495, 466 (1969). At the time of pleading guilty, Petitioner did not possess an understanding of the law in relation to the facts since neither the Court, government, Petitioner, or his counsel understood that the threat element required proof of knowledge or purpose. <u>See Decl.</u> at 2. "[A] plea of guilty admits **only** the elements of the charge necessary for a conviction." <u>United States v. Vann</u>, 660 F.3d 771, 774 (4th Cir. 2011) (internal citation and quotation marks omitted) (emphasis added). Since the Petitioner never admitted to purposefully or knowingly threaten the victims and that he did not even know that such intent was part and parcel of extortion, the conviction was obtained in violation of Due Process.

The Tenth Circuit has said that "[i]n order to establish that a plea is involuntary under <u>Henderson</u>, 'we require a petiti-

10.

oner to: (1) show that the intent element was a critical element of the charge, (2) overcome the presumption that his attorney explained this element to him at some other time prior to his guilty plea; and (3) demonstrate that, prior to his guilty plea, he did not receive notice of this element from any other source. Hicks v. Franklin, 546 F.3d 1279, 1284 (10th Cir. 2008). There can be no doubt that the "intent to extort" element is a critical element, indeed the most critical element, of the statute. "We will not apply the presumption that the attorney explaind the element to the defendant (second requirement) unless there is some factual basis in the record to support it." Hicks at 1284. Petitioner's attorney never explained that intent to threaten was required to be proven or admitted or at least known to be a crucial aspect of extortion prior to his guilty plea. See Decl. at 2. Petitioner did not receive notice of this eleemnt from any other source since neither the Court, Petitioner's counsel, nor Respondent - all possible sources of notice for Petitioner - knew the defition of "intent to extort" and that an intent to threaten was part and parcel of the intent to extort. See id.

The plea is involuntary since the Court did not advise Petitioner that the government had to prove mental state of the threat. See, generally, Ivy v. Caspari, 173 F.3d 1136 (8th Cir. 1999) (finding that the defendant's guilty plea was involuntary where the judge failed to advise the defendant tha the State was required to prove that the defendant intended to commit the felony underlying the felony murder charge); Evenstad v. United States, 494 F. Supp. 146 (D. Minn. 1980) ("It cannot be said that the defendant made his plea with understanding of nature of chrage where at no time during the plea proceedings was defendant

11.

asked about his understanding of essential eleemnt."); Bousley v. United States, 523 U.S. 614, 618-19 (1998) (even if court and defense attorney provided informatio to defendant about nature of chrage that was accurate at tim of plea, if later developments show defendant to have been misinformed about essential elements of offense, plea is constitutionally invalid). "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences. Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (internal citations and quotation marks omitted). Also, "[t]he Supreme Court has recognized that a defendant cannot be said to have intelligently entered a guilty plea if 'neither he, nor his counsel, nor the court correctly understood the **essential elements of the crime**,' as those elements were interpreted by the [Court of Appeals] after entry of his plea." United States v. Johnson, 410 F.3d 137, 152 (4th Cir. 2005) (quoting Bousley at 618-19) (emphasis original). As such, Petitioner's guilty plea was clearly not intelligently entered.

A guilty plea "is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). "And clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirements of due process.'" Henderson at 645 (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). "A defendant's ignorance of the mens rea element of the offense with which

Vivek Shah
43205-424
Federal Medical Center
PO Box 14500
Lexington KY 40512

43205-424
Us District Court
Clerk of Court
110 N Heber ST
Rm 119
Beckley, WV 25801
United States

2580134552 0014


