Envelope

#2 of 2

he is chraged renders his guilty plea involuntary as a matter of constitutional law." United States v. Dewalt, 92 F.3d 1209, 1211 (D.C. Cir. 1996). Mere statements of threats coupled with a money demand does not constitute the crimes that Petitioner pled guilty to. The factual basis supporting the conviction no longer supports the elements of the crimes either.

At this point, Petition Petitioner would like to remind this Court that it has not yet provided him copies of the plea and sentencing hearing transcripts as requested in his previous Motion filed in this Court nearly ten months ago (as of the date of this brief), and therefore he does not have any arguments fully developed from the record or specific parts of the records to be cited and argued properly.

This case has some resemblance to United States v. Fard, 775 F.3d 939 (7th Cir. 2015) in which the defendant's conviction was vacated becase the court could not conclude that he was fully aware of the nature of the crime to which he pled guilty, which related to the very heart of the protections afforded by the Constitution and Rule 11. In Fard, the "court never explained what 'intent to defraud' means or what a fraudulent scheme is... when the judge asked Fard if the government's proffer regarding how the scheme worked was accurante, Fard responded 'partial true.'" id at 945. Similar to Petitioner, the Court never explained what intent to extort meant (and even if it did, as may might be in transcripts, it would have been an incorrect meaning) and even when the judge asked Petitioner if the government's proffer regarding how the extortion scheme worked, Petitioner stated that it was more or less true. When the Court asked him if he intended to extort money, Petitioner stated in response that he had created a **perception** that the victims were being extorted.

When the judge asked again for clarification, Petitioner clearly became confused as to what the judge meant when he had to then confer with his counsel as to the meaning of the judge's question. It was only upon the advisement of Petitioner's counsel that he stated yes, but also wanted to make it crystal clear what the whole purpose of sending the letters was - i.e., to obtain publicity to help further his acting career. It was already evident and everyone in the Court knew that Petitioner was an actor by profession and had starred in numerous films, television shows, and commercials commercials. So much so that the Court, sua sponte, issued a gag and seal order several months prior to his plea. See Doc. 14, 17.

This case is alos like United States v. Fernandez, 205 F.3d 1020 (7th Cir. 2000) in which a defendan'ts conviction and sentenc was vacated because he did not admit tot he factual basis proffered by the prosecutor and did not understand the charge to which he was pleading guilty. Like Fernandez's charge of conspiracy, extortion is not a self-explanatory legal term or so simple in meaning that it can be expected or assumed that a lay person understands it. id at 1026. Fernandez stated "Not all of the acts, partially," when the court asked him if what the AUSA's factual was correct. id. Like Fernandez, "it is impossible to determine whether [Petitioner] himself understood the nature of the crime[s] to which he was pleading guilty." id at 1027. See also, generally, United States v. Pineda-Buenaventura, 622 F.3d 761 (7th Cir. 2010).

Although in White the the Fourth Circuit uses the word "procure" instead of "obtain" as part of the definition of intent to extort as compared to the definition in the Hobbs Act, the meaning imported remains the same. Procuring or "[o]btaining property requires not only the depirvation but also the acquisit-

14.

ion of property. That is, it requires that the victim 'part with' his property, and ~~that the~~ that the extortionist 'gain possession' of it." <u>Sekhar</u> at 801 (internal citations and quotation marks omitted). At the time of pleading guilty, it was Petitioner's understanding that intent to extort meant to knowingly demand money ~~//////~~ with a threat to injure. Even if his understanding was incorrect at the time, the facts make clear that he did not intend to deprive or acquire the money from the victims. To think otherwise would mean that Petitioner would be serving an extreme-ly long prison sentence and there wouldn't be any 'furtherance' of his acting career — based on facts agreed by both parties. Petitioner also did not want the victims to part with their money, and that he gain possession of it either, under the same facts and reasoning. As such Petitioner remains factually innocent even under <u>White</u>'s interpretation of "intent to extort."

## III. White IS NOT RETROACTIVELY APPLICABLE

The judicial construction of the "intent to extort" element has the effect of an ex post facto law as-applied to Petitioner's conviction and hence denies him right of fair warning under the Due Process Clause. "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." <u>Bouie v. Columbia</u>, 378 U.S. 347 354 (1964) (internal quotation marks omitted). <u>See also United States v. Gray</u>, 362 F.Supp. 714, 725-28 (S.D. W. Va., Mar. 17, 2005). There was no previously available reference to which Petitioner could have known the meaning of intent to extort. The new judicial construction of that element is unexpected based on the arguments advanced in Section I of this Supplemental Brief. It is indefensible because there wasn't any law available to

15.

Petitioner that he could reference to prior to his conduct. No court in this Circuit had held that intent to threaten was part and parcel of intent to extort. The new standard casts a significantly wider net than the prior standard. Not only does the new interpretation now now include a specific intent to threaten, it also expands the definition to include robbery within extortion's definition since consent is no longer required to be proven . It also means that anybody that has previously pleaded guilty to §§ 875(b) or 876(b) under the reasonable person standard of the objectively understood threat at the time, would retroactively be held to also be having the specific subjective intent to threaten injury or kidnapping. Thus, the judicial decision in <u>White</u> expanded criminal liability by broadening the definition of intent to extort. It would also mean that if Petitioner wanted to defend his case by stating that he did not intend to threaten his victims, then that defense would have been rejected under the Fourth Circuit's prior holdings. At the time of Petitioner's conduct, it was his understanding that extortion meant to demand money that was not due to him and also making threats, and that to intend to extort would mean that he was after the money (which was why he had created a perception that he was after the money, when in fact he was after the publicity). If the Court still finds Petitioner's conduct criminal as a result of the new judicial construction of the intent to extort element, then the construction would violate Petitioner's right to Due Process. He cannot go back in time and change his conduct to make sure that it didn't violate §§ 875(b) and 876(b) per the definition of intent to extort provided in <u>White</u>.

## IV.  PETITIONER IS YET INNOCENT

Retroactive or not, Petitioner's yet innocent.

## A. PETITIONER DID NOT HAVE THE SPECIFIC INTENT TO EXTORT

Applying the facts to the meaning of specific intent in comparison to general intent renders Petitioner actually and factually innocent of the crimes of conviction. Although Petitioner has quite aptly argued the difference between specific and general intent to extort previously in his briefs using a case example provided by the Supreme Court in Carter v. United States, 530 U.S. 255 (2000), further differentiation is also helpful from this Circuit's case law. In United States v. Blount, 364 F. 3d 173 (4th Cir. 2004), the Fourth Circuit interpreted § 2J1.2 of the Sentencing Guidelines to include ~~include~~ an element of intent in the guidelines, which provide, in relevant part: "If the offense involved causing... physical injury to a person, in order to obstruct the administration of justice[.]" The Court said that "the defendant must cause physical injury **for the purpose** of obstructing justice." id at 177 (emphasis original). The semblance with §§ 875(b) & 876(b) is that Petitioner must threaten injury for the purpose of extorting money from the victims. The Court stated that"[t]his purpose of obstructing justice not only imposes an intent requirement on 'causing physical injury,' but also narrows that intent such that the injury must be caused to obstruct justice, not for some other purpose." id at 177-78. In Petitioner's case, the purpose of demanding money from the victims not only imposes an intent requirement of the thret to injure, but also narrows that intent such that the threat must be caused to gain possession of the money, "not for some other purpose." It is a fact that the purpose of the mailing of the threatening letters with a demand

17.

of money was to obtain publicity that he hoped would further his acting career. Although he did know that the letters would be viewed as extortionate by the victims and law enforcement, it was not his purpose to procure, obtain, deprive, or acquire any money from the victims. The Court further stated that "While causing physical injury must stem from the specific intent to obstruct justice, the intent to cause physical injury can be general - an intent that anticipates some unparticularized form of physical injury - so long as the defendant had the specific purpose of obstructing justice." id. Although Petitioner has previously argued that admitting to "intent to extort" does not suffice as admitting to the element, even assuming for the sake of this argument that admitting to intent to extort is a fact, then that fact would have amounted to nothing more than a general intent to extort and not a specific intent to extort. Petitioner stated quite clearly to the court that he created a perception that the victims were being extorted. Further, he also stated quite clearly that it was his intent to cause publicity by having mailed the letters so that the publicty could then further his acting career. "Drawing on principles common to criminal and civil law to define this general intent," the Court concluded "that the defendant must have a state of mind - while focused on the purpose of obstructing justice - in which he **knows** that his conduct will cause physical injury, or he **desires** to cause physical injury, or he **believes** that physical injury is substant- ially certain to result from his conduct." id (emphasis original) (citing, e.g., Model Penal Code § 2.02(2)(a) (stating that a defendant acts purposely if "it is his concious object to engage in conduct of that nature or to cause such a result" and, if the

conduct involves attendant circumstances, "he is aware of the existence of such circumstances or he believes or hopes that they exist"); Restatement (Second) of Torts § 8A (defining intent as the actor's **desire** "to cause [the] consequences of his act" or his **belief** that "the consequences are substantially certain to result from it")). Assuming arguendo that Petitioner had the requisite mens rea of intent to threaten, it was not his conscious object to prcure money or that he even hoped to make any financial gain from the victims. He neither desired nor believed that he would obtain money. Heck, he even promised to return the money with a 4% APR if he were ever to receive money (although the real reason why even stated such absurd promise was because it was part of the hoax).

General intent is ordinarily "at least an intention to make the bodily movement which constitutes the act which the crime requires." 1 W. LaFave & A. Scott, Substantive Criminal Law, § 3.5, p. 315 (1986). It means "that the defendant possessed knowledge with respect to the actus reus of the crime." Carter at 268. At most, the admission that he intended to extort money could be considered an intention to make the bodily movement of writing the demand and threat letter and transmitting it in interstate commerce. "In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." United States v. Bailey, 444 U.S. 394, 405 (1980). Significantly, "a person who causes a particular result is said to act purposefully if he consciously desires that result, whatever the likelihood of that result happening from his conduct, while he is said to act knowingly if he is aware that the rsult is practically certain to follow from this conduct, whatever his desire may be as to that

resu

19.

result." id at 404 (internal quotations omitted). With these differences between general intent / knowledge and specific intent / purpose, it is doubtful that Petitioner even had a general intent to extort since he was not aware that the practical result to follow from his conduct would be for the victims to part with their money. One fact, oft repeated, that carries an enormous weight in this case is the fact that Petitioner intended to obtain publicity that he hoped would further his acting career. There are two intents that are stated as facts: 1) intent to extort, and 2) intent to obtain publicity. One of the intents must be specific and the other general; they both cannot co-exist simultaneously. Quoting White, "it would be passing strange, indeed impossible," for Petitioner to both specifically intend to extort money as well as obtain publicity. One intention has to give way to the other. Since it would make absolutely no sense that a person would want to obtain publicity to help **further** his acting career without purposefully and consciously desiring that result (and not to further a prison career), it is clear that Petitioner specifically intended to obtain publicity through his conduct. He did not have a specific intent to extort money.

## B. INTENT TO EXTORT REQUIRES PERMANENT DEPRIVATION OF PROPERTY

The intent to extort money from another includes in its meaning that one has to intend to permanently deprive another of his money. See, e.g., United States v. Santiago, 207 F. Supp. 2d 129, 144 n.11 (S.D. N.Y., Jun. 6, 2002) ("Under New York law, extortion is defined as the wrongful taking of property from its owner, with an intent to permanently deprive the owner of such property, through intentional threats that instill in the owner a fear...") (citing N.Y. Penal Law § 155.05(2)(e) (McKinney 2002)) ; Guzell v. Hiller, 223 F.3d 518, 521 (7th Cir. 2000) (Under

20.

Illinois law, extortion "is treated as a form of theft" which includes the permanent deprivation of property, where permanent means "either permanently or for an unreasonable length of time, or that the defendant intended to use it in such a way that the owner will probably be deprived of his property."); People v. Koerber, 244 N.Y. 147, 155 N.E. 79, 82 (N.Y. 1926) (the New York statute that was predecessor to the Hobbs Act required a specific intent to deprive another of his property permanently). Since the fact remains that Petitioner had promised to return the money to the victims, he did not intend to permanently deprive them of their money.

**ADDENDUMS:**

1. United States v. Williams, 480 F. Supp. 1040, 1042 (E.D. La., Jun. 20, 1979) ("The New York law [the basis of Hobbs Act]... is different from the common law definition of extortion. Under the common law, extortion was defined as 'the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due to him, or the taking of more than is due, or the taking of money before it is due.'"); see also id. at n.5. By expanding the definition of extortion from public officials to all persons, the commonlaw definition of extortion applied to all persons that un--unlawfully took any money or thing of value that was not due to him.

2. People v. Whaley, 6 Cow. 661 (N.Y. Sup. Ct. 1827) at 663 ("[Extortion] signifies the taking of money by any officer, by color of his office; either, where none at all is due, or not so much due, or when it is not yet due" under common law).

Dated: April 1, 2016

Respectfully submitted,


VIVEK SHAH
43205-424
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was deposited in my institution's mail system, by first-class U.S. mail (in a properly addressed envelope with first-class postage duly paid) to the U.S. Attorney's Office for the Southern District of West Virginia on April 1, 2016.


VIVEK SHAH

Executed on April 1, 2016

22.